UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                        05-CV-1326(JMR/RLE)


Kalan Enterprises, LLC            )
                                  )
        v.                        )           ORDER
                                  )
BNSF Railway Company              )


A freight train operated by defendant derailed. The accident caused a railcar to eject, demolishing a warehouse occupied by plaintiff's business. Plaintiff seeks damages for the losses incurred. Defendant seeks summary judgment, claiming federal preemption bars plaintiff's state law negligence and res ipsa loquitur claims.[1] Defendant's motion is granted.

I. Background[2]

On October 7, 2003, a railcar owned and operated by defendant, BNSF Railway Company ("BNSF"), jumped the track in Perham, Minnesota. The car crashed into a warehouse leased by plaintiff, Kalan Enterprises, LLC ("Kalan"). Kalan was in the candy business, and was storing its inventory only weeks before Halloween.

The runaway railcar had been in the middle of the assembled freight train. The post-crash investigation revealed a mechanical failure caused by a missing cross key in the car's B-end coupler.

---

[1] Defendant also claims it had no duty of care, because plaintiff was a trespasser. Because the Court finds plaintiff's claims preempted, it declines to address the question of duty owed.

[2] Those facts which are not agreed are considered in the light most favorable to plaintiff.

When the train's emergency brakes were applied, the back end of the train struck the empty railcar, ejecting it. The car tumbled end-over-end for some distance before crashing into the warehouse.

Kalan seeks damages for losses resulting from the accident. Its first four claims allege BNSF violated multiple federal rail safety standards, including Code of Federal Regulations (C.F.R.) title 49, sections 215, 232, 232.407, and 232.409. Its fifth claim is that BNSF negligently operated a defective train at an unsafe speed. Its sixth claim is that BNSF negligently applied the train's emergency brakes. In claim seven, plaintiff alleges BNSF improperly made up and placed the train's railcars. For its eighth and ninth claims, plaintiff asserts a failure to inspect, and the movement of defective railcars, in violation of Association of American Railroad ("AAR") standards. In Kalan's tenth claim, it alleges "other acts of negligence that will be proven during the courts of discovery and at the trial. . . ." Finally, Kalan claims BNSF is liable on the theory of res ipsa loquitur.

BNSF asks for summary judgment, asserting that all of Kalan's claims are preempted by the Federal Railroad Safety Act ("FRSA") and its attendant regulations. BNSF is correct. Defendant's motion is granted; plaintiff's action is dismissed.

II.  Analysis

   A.  Summary Judgment

Summary judgment is appropriate when there are no material

2

facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 250; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992). If the opposing party fails to carry that burden or fails to establish an essential element of its case, summary judgment should be granted. <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

  1. <u>Preemption</u>

State laws are preempted whenever they frustrate or conflict with the laws of Congress. U.S. Const. art. VI, cl. 2; <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 663 (1993). When enacting the FRSA, Congress authorized the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103. The Secretary delegated the authority to "[c]arry out the functions vested in the Secretary by the [FRSA]" to the Federal Railroad Administration ("FRA"). 49 C.F.R. § 1.49(m). The FRA has done so by establishing a "national railroad safety program . . . to promote safety in all areas of railroad operations in order to reduce deaths, injuries and damage to property resulting from railroad accidents." <u>Id.</u> at

§ 212.101(a).

To assure that railway safety is "nationally uniform to the extent practicable," Congress wrote into the FRSA an explicit preemption clause permitting a state to regulate railroad safety only "until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement."  49 U.S.C. § 20106.  Once the Secretary of Transportation has done so, state law is preempted.  The United States Supreme Court has made this clear.  It held that regulations adopted pursuant to the FRSA preempt state law tort claims if the regulations cover -- or "substantially subsume" -- the subject matter of the relevant state law.  Easterwood, 507 U.S. at 664.

Plaintiff asks this Court to find that, for BNSF to invoke the FRSA's preemption, BNSF must not only prove that the regulations cover the subject matter of plaintiff's claims, but also its compliance with those regulations.  The Court declines this invitation.  To do so would turn Congress's preemption on its head, and eviscerate its effect.  Plaintiff essentially asks the Court to rule that only a perfect railroad is covered by the FRSA.  A railway which erred would, perforce, be denied FSRA preemption. This option would certainly "protect" perfection, but any railroad experiencing problems would be subject to multiple levels, kinds, and styles of state regulations -- which is exactly what Congress sought to preempt within the ambit of the prescribed regulations.

4

The Court rejects plaintiff's "compliance" theory of preemption.[3] Neither the United States Supreme Court, nor the Eighth Circuit Court of Appeals require railroads to prove FRA compliance before allowing state law preemption. Both Courts deem coverage, rather than compliance, to be preemption's touchstone. Easterwood, 507 U.S. at 664; In re Derailment Cases, 416 F.3d 787, 793 (8th Cir. 2005) (hereinafter Scottsbluff). The Eighth Circuit recently held that state tort laws are preempted whenever regulations adopted pursuant to the FRSA address the same subject matter. Scottsbluff, 416 F.3d at 793.

Plaintiff attempts to bolster its position by reference to cases involving railroad crossings. See Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344 (2000); Kiemele v. Soo Line R.R. Co., 93 F.3d 472 (8th Cir. 1996); St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc., 39 F.3d 864 (8th Cir. 1994). These cases are inapposite; plaintiff's reliance is misplaced.

As an initial matter, Shanklin was a case in which the Supreme Court explicitly set aside issues of adherence to federal regulations when considering preemption. It stated, "[w]hether the

---

[3]The Court is aware of other District Courts which have reached contrary results. See Sheppard v. Union Pac. R.R. Co., 357 F.Supp. 2d 1180, 1187 (E.D. Mo. 2005); McClure v. Burlington N. Santa Fe Ry. Co.; 2005 WL 174877 (D. Neb. Jan. 26, 2005). After reviewing these cases, the Court adheres to its own views. These cases were also decided prior to In re Derailment Cases, 416 F.3d 787, 793 (8th Cir. 2005). This Court's view is in accord with the Eighth Circuit's later holding.

state should have originally installed different or additional devices . . . is immaterial to the pre-emption question." 529 U.S. at 358. The court reasoned that displacement of state law, rather than compliance with federal regulatory standards, determined whether state laws were preempted. Id. at 357-58. The Circuits are in accord. See, e.g., Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 747 (7th Cir. 2005) (state claims premised upon failure to adhere to federal regulations do not survive preemption); Hesling v. CSX Transp., Inc., 396 F.3d 632, 645 (5th Cir. 2005) (same).

Second, railroad crossing cases are distinguished from the case at hand. Federal crossing regulations address the design of grade crossing improvements paid for with federal funds. 23 C.F.R. § 646.214(b). The regulations "cover" -- and preempt -- state law claims only after these devices have been installed and federal funds are spent. Malone, 39 F.3d at 865. To the extent that crossing cases discuss whether the crossing devices were properly installed or were in working order, the discussion was only relevant to the question of whether federal funds had been spent -- not whether there was compliance with federal regulations.

Proper preemption analysis turns on whether FRA regulations substantially subsume Kalan's negligence claims, regardless of whether BNSF complied with the regulations. See Mayor & City Council of Baltimore v. CSX Transportation, Inc., 404 F. Supp. 2d

869 (D. Md. 2005). These regulations need not spell out every detail or "impose bureaucratic micromanagement in order to substantially subsume a particular subject matter." Scottsbluff, 416 F.3d at 794. The ultimate question, therefore, is whether FRA regulations cover the subject matter of Kalan's claims.

### a. Plaintiff's negligence claims

Kalan alleges four separate instances of BNSF's negligent violation of identified FRA regulations. It claims violations of 49 C.F.R. sections 215, 232, 232.407, and 232.409. These regulations cover BNSF's allegedly negligent acts, and -- as seen above -- the fact that they do is the reason FRSA preemption is operative.

Preemption bars private causes of action for FRA violations. Congress gave the Secretary of Transportation "exclusive authority" to impose civil penalties and request injunctions for violations of the railroad safety regulations.[4]  49 U.S.C. § 20111(a); Abate v. S. Pac. Transp. Co., 928 F.2d 167, 170 (5th Cir. 1991) ("The structure of the FRSA indicates that Congress intended to give federal agencies, not private persons, the sole power of enforcement.").

---

[4]The single exception to the Secretary's exclusive authority is available when the federal government fails to act promptly, in which case state government agencies can file suit, impose penalties, or seek injunctions. 49 U.S.C. § 20113.

Kalan's fifth claim, that BNSF operated a defective train at an unsafe speed, also fails. In <u>Easterwood</u>, the Supreme Court itself found excessive speed claims preempted by 49 C.F.R. section 213.9, which "establishes maximum train speeds." 507 U.S. at 675. Similarly, section 215 covers "freight car safety standards," section 229 covers "railroad locomotive safety standards," and section 232.401-409 covers "end of train devices."

The sixth claim, of BNSF's negligence in applying the emergency air brake system, is preempted by 49 C.F.R. section 232, which "prescribe[s] safety standards for freight and other nonpassenger train brake systems and equipment." Emergency application of brakes is also covered by section 232.103(i).

Kalan's seventh allegation, that BNSF was negligent in making-up the train and placing cars, also fails. The Court finds these assertions are simply recasts of the preempted negligence-in-brake-application claim. The substance of this claim also falls within the ambit of 49 C.F.R. section 232, which addresses braking systems. The Court also considers that, when sitting in diversity, a federal court is obligated to apply the settled law of the jurisdiction. <u>Thomsen v. Ross</u>, 368 F. Supp. 2d 961, 977 (D. Minn. 2005). It is fair to say that Minnesota is not a jurisdiction with a well-settled body of law touching a railway company's duties in boxcar ordering.

Kalan's eighth and ninth claims, which charge that BNSF violated the Rules of the AAR's Field Manual, is preempted. Whether or not the AAR's regulations differ from the promulgated regulations does not negate the fact that the subject matter of Kalan's claims are covered by FRA regulations; the regulations do not have to bureaucratically micromanage a subject area in order to preempt state claims. Scottsbluff, 416 F.3d at 794.

Questions of train inspections fall squarely in the midst of multiple FRA regulations. This was the basis upon which the Scottsbluff court found negligent inspection claims preempted by the FRSA. Id.

Kalan's claim of negligent railcar movement is similarly treated, considering the extensive federal regulatory scheme. Specifically, whether a railcar is "defective" and unsafe for movement is covered by 49 C.F.R. section 215.

Plaintiff's tenth claim appears to be a "catch-all," alluding to "other acts of negligence" which might be discerned through the use of pretrial discovery or disclosed at trial. Setting aside the probable defect in a pleading, which does not allege the specific facts upon which it is based, plaintiff wholly fails to show that any of its undiscovered claims lie beyond the ambit of the FRSA's broad regulatory support system. The Court holds as a matter of law that this claim fails to survive defendant's preemption motion. Thus, all of plaintiff's negligence claims are preempted by the

9

FRSA.

### b.  <u>Plaintiff's res ipsa loquitur claim</u>

Finally, plaintiff falls back on an unsupportable claim of res ipsa loquitur.  This theory simply asks the Court to infer negligence based upon circumstantial evidence -- it is merely negligence in Latin clothing, and it remains preempted.  <u>See</u> <u>Scottsbluff</u>, 416 F.3d at 794 n. 8.  Plaintiff's problem is not that there is no evidence of negligence; its problem is that there is such evidence, and claims based upon it are preempted by an Act of Congress.

## III.  <u>Conclusion</u>

The Court finds plaintiff's Complaint is preempted by the FRSA.  For this reason, summary judgment is granted. Accordingly, this matter is dismissed with prejudice.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February <u>14</u>, 2006

s/ James M. Rosenbaum<br>
JAMES M. ROSENBAUM<br>
United States Chief District Judge